# In the United States Court of Federal Claims

No. 12-15C
(Filed: October 30, 2013)

```
*****************************************
LUTHER BRADY TANSIL,              *
                                  *
            Plaintiff,            *
                                  *    RCFC 12(b)(1); Military Pay; Statute of
v.                                *    Limitations; Accrual Suspension; Legal
                                  *    Disability
THE UNITED STATES,                *
                                  *
            Defendant.            *
*****************************************
```

Kurt Thornbladh, Dearborn, MI, for plaintiff.

James P. Connor, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

      Plaintiff Luther Brady Tansil filed suit in this court seeking $57,600 in military back pay and separation pay, $10,000,000 in money damages, and to have his 1994 bad conduct discharge from the United States Navy ("Navy") amended to a more favorable discharge. Plaintiff alleges that the Board for Correction of Naval Records ("BCNR") acted in a manner that was arbitrary and capricious in rejecting his application for the correction of his records, and asks this court to correct the BCNR's determination as well as award him back pay. Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction due to the running of the statute of limitations and, in the alternative, for judgment on the administrative record. Plaintiff, who served in the Navy for over a decade, argues that the statute of limitations was tolled as a result of his imprisonment and drug addiction. However, the application of binding precedent to plaintiff's allegations leads the court to conclude that his complaint is time-barred. Accordingly, the court must grant defendant's motion and dismiss the case for lack of jurisdiction.

### I. FACTUAL BACKGROUND

      Plaintiff enlisted as a seaman recruit in the Navy Reserve as part of the Navy's delayed entry program on May 31, 1978. AR 117, 136. On June 6, 1978, plaintiff began his active duty service, enlisting for a period of four years. Id. at 120, 136. Plaintiff then reenlisted in the Navy for an additional three years and three months in August 1982. Id. at 122, 128-29. Plaintiff reenlisted in September 1985 for a third time, id. at 165, and for a fourth time in May 1989, id. at 167. Plaintiff served on ships and shore and his primary duties were as a commissary

warehouseman, an afloat sales and service specialist, and a barber.  Id. at 131, 133-35, 167-69, 203-21.

During the course of his service, plaintiff received several medals and awards, including a national defense service medal, two good conduct medals, a humanitarian service medal, and three sea service ribbons.  Id. at 9, 163-72.  Plaintiff's superiors spoke very highly of him in his performance evaluation reports.  Id. at 203-21.  For instance, in October 1985, plaintiff's superior officer wrote:  "Although Petty Officer Second Class Tansil has been on board [USS] Proteus less than 90 days, his superior performance has been an inspiration for his subordinates.  His high level of enthusiasm has improved the morale and quality of work produced by those who serve with him.  Petty Officer Tansil is a welcome member of the sales division."  Id. at 212.

Plaintiff's reenlistment in May 1989 committed him to serve in the Navy until May 1993.  Id. at 135.  However, in mid-January 1991, plaintiff tested positive on a urinalysis test for cocaine.  Id. at 8-10; Compl. 1.  Two months later, plaintiff again tested positive for cocaine.  Id. at 12-13.  As a result, the Navy charged plaintiff under Article 112a of the Uniform Code of Military Justice ("UCMJ").[1]  Id. at 10, 12.  When plaintiff enlisted in 1978, he signed a form indicating that he was aware of the Navy's policy regarding illegal drug use and that the use of drugs other than marijuana would lead to discharge.  Id. at 154.  In addition, the Navy had a clear "zero-tolerance" drug policy in place at the time plaintiff tested positive for cocaine.  See Def.'s Mot., App. 34 (reproducing the relevant portion of Chief of Naval Operations Instruction ("OPNAVINST") 5350.4B that was in force in 1991); see also Williams v. Sec'y of the Navy, 787 F.2d 552, 554-55 (Fed. Cir. 1986) (discussing generally the Navy's zero-tolerance drug policy).  This policy was reflected in Navy directives and in OPNAVINST 5350.4B.  See Def.'s Mot., App. 33-52; see also Williams, 787 F.2d at 555 (discussing the directives and regulations implementing the Navy's zero-tolerance drug policy).

As a result of the charges, the Navy convened a special court-martial on April 26, 1991.  AR 374.  After a weekend delay to replace the Navy's counsel because of an attorney-client conflict with plaintiff, the court-martial was reconvened on April 30, 1991.  Id. at 381.  Waiving the right to a multimember panel court-martial, plaintiff pled guilty to both charges to the Judge Advocate General overseeing the case.  Id. at 387-96.  Plaintiff admitted that he smoked "a few rocks" of crack cocaine and that he knew it was wrong for him to use cocaine.  Id. at 390-94.  Plaintiff also made clear that he was seeking help for his addiction and wanted to be retained in the Navy.  In pleading guilty, plaintiff made the following statement:

---

[1] Article 112a(a) of the UCMJ states, in pertinent part, that any member of the armed forces "who wrongfully uses, possesses, manufactures, distributes, imports . . . , exports . . . , or introduces into an installation, vessel, vehicle, or aircraft used by or under the control of the armed forces a substance described in subsection (b) shall be punished as a court-martial may direct."  Cocaine is specifically listed under subsection (b)(1) as a controlled substance.  10 U.S.C. § 912a (1988).

> Sir, I have been in the military for almost 13 years. I enlisted in Boot Camp two weeks after graduating from high school. I have been on 4 ships and 2 shore stations.
>
> My problems with drugs specifically my cocaine problems started roughly in November of last year. I lost my brother in Columbia, Tennessee due to cancer. After that things just started to fall apart. Bills started not to get paid. My wife is also a drug user. I am worried if I go to the brig what will happen with regards to my two children? Will they be taken care of? I would also like my wife to get help with her drug problems while I receive help for my drug problems.
>
> I would like to say, sir, that these are just problems and they are not excuses. There is no excuse for what I did.
>
> I fully intended to complete 20 years of military service for the Navy and those are still my intentions if the Navy is willing to give me a chance. I am not a bad person. I just made some bad choices, two bad choices.
>
> I would also like to go through rehabilitation for substance abuse. I would also like my wife to go through a similar program.
>
> I am presently trying to get spiritual help through my church. I am hoping they will help me get my life back together. I am also asking the Navy that they help me get my life back together. I need help and I am asking for it. I am asking the Navy to help me out and try to save my life and my career and help my wife out also. That is all I have to say sir. Thank you.

Id. at 397-98. After hearing the statement and reviewing the evidence, the court-martial judge recommended that plaintiff be sentenced to forfeit $300 pay per month for three months, to be reduced down to the lowest level of enlistment, E-1, and to be discharged with a bad conduct discharge. Id. at 399. The commanding officer who convened the court-martial adopted the recommendations of the court-martial judge on June 21, 1991. Id. at 366-67. The Navy placed plaintiff on appellate leave under Article 66 of the UCMJ. Id. at 1, 63-65, 366-67; Compl. 1-2. On March 31, 1994, at the end of the appellate process, plaintiff was discharged from the Navy. AR 169. The Navy gave as the reason for plaintiff's separation his court-martial conviction, and characterized the discharge as one for bad conduct character of service. Id.

On May 2, 2007, plaintiff submitted an application for correction of his naval records to the BCNR. Id. at 104-05. He requested that his "Bad Conduct Discharge be upgraded to a more favorable discharge." Id. at 85. He also requested that his records be updated to reflect that he was discharged at grade E-4. Id. The BCNR denied plaintiff's application on March 14, 2008.

Id. at 100-01. It determined that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." Id. at 100. The BCNR mistakenly stated that plaintiff was discharged due to unauthorized absences from February 20, 1991, through May 22, 1991. Id. While the BCNR did find support for this information from plaintiff's discharge form, the discharge form cited to the incorrect court-martial order. Compare id. at 169 (plaintiff's discharge order, listing in block 25 the special court-martial order number 06-92, dated July 2, 1992), with id. at 366 (plaintiff's special court-martial order number 26-91, dated June 21, 1992). Plaintiff was discharged pursuant to his court-martial conviction for using cocaine and the administrative record provides ample documentation for that conclusion.

Following the BCNR's initial decision, plaintiff submitted several requests for reconsideration to the BCNR. Id. at 7-19, 25-47. In his requests, plaintiff sought a change in his discharge status, arguing that the original form was incorrect because he was not in unauthorized absence during the time listed on his discharge form and was instead discharged for using cocaine. Id. at 7-17. He also requested that the BCNR consider 32 C.F.R. § 62.4, which, he alleged, made it the policy of the United States Department of Defense to treat or counsel, not discharge, service members who were drug abusers to rehabilitate them to the maximum extent possible, a policy he alleged was not followed in his case. Id. at 34-40.

The BCNR accepted plaintiff's last request for reconsideration. Id. at 4. On April 23, 2009, the BCNR issued its reconsideration decision and recognized that plaintiff was discharged for using cocaine on two occasions, not for unauthorized absences. Id. at 1. However, the BCNR again denied his request for a more favorable discharge, concluding that his "service was appropriately characterized with a bad conduct discharge, given [his] repeated acts of drug abuse." Id. The BCNR also noted that, despite plaintiff's reference to 32 C.F.R. § 62.4, it was irrelevant that he had requested drug rehabilitation to be retained on active duty, because he "would not have been entitled to be restored to duty even if [he] had successfully completed a drug rehabilitation program." Id.

Plaintiff filed suit in this court on February 9, 2012, originally appearing pro se. Plaintiff is currently incarcerated in Michigan state prison as a result of his drug problems. Pl.'s Resp. 11. Plaintiff filed a motion requesting court-appointed counsel on April 2, 2012, and on November 28, 2012, Kurt Thornbladh filed an appearance on his behalf. In the interim, defendant filed a motion to dismiss or, in the alternative, a motion for judgment on the administrative record. The parties concluded their briefing and the court deems oral argument to be unnecessary.

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); see also Matthews v. United States, 72 Fed. Cl. 274, 278 (2006) (noting that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power

to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Thus, unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." Sherwood, 312 U.S. at 587-88.

The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). "It is well established that the Military Pay Act is a money-mandating statute." Smith v. Sec'y of the Army, 384 F.3d 1288, 1294 (Fed. Cir. 2004).

### B. Statute of Limitations

Statutes of limitations "are vital to the welfare of society and are favored in the law." Wood v. Carpenter, 101 U.S. 135, 139 (1879). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2006). A claim under the Tucker Act accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)). The statute of limitations barring actions against the United States "is jurisdictional, because filing within the six-year period is a condition of the waiver of sovereign immunity in the Court of Federal Claims under the Tucker Act." Sabree v. United States, 90 Fed. Cl. 683, 691 (2009); accord John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008). As such, § 2501 must be "strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988).

### C. Motion to Dismiss

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2006)). "Deciding whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "The court assumes all well-pled factual allegations are true and indulges in all reasonable inferences in favor of the nonmovant." Terry v. United States, 103 Fed. Cl. 645, 652 (2012) (citing United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006)).

### III. DISCUSSION

The Court of Federal Claims possesses jurisdiction over military pay cases pursuant to 28 U.S.C. § 1491(a)(1) and 37 U.S.C. § 204. Smith, 384 F.3d at 1294; Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004). However, plaintiff must also satisfy the statute of limitations.

Plaintiff's claims are based on his argument that Navy regulations, in particular 32 C.F.R. § 62.4, required the Navy to refer him to drug abuse rehabilitation prior to discharging him, and his requests at the time of discharge that he receive that rehabilitation. Plaintiff alleges that because he did not receive the referral for rehabilitation and subsequent treatment, his discharge was improper. In military discharge cases, a "plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." Martinez, 333 F.3d at 1303; accord id. at 1304 (noting that "the claim accrues 'at one time, once and for all,' on the date of discharge" (quoting Mathis v. United States, 391 F.2d 938, 939 (Ct. Cl. 1968)). "If the plaintiff does not file suit within the six-year limitation period prescribed in 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge." Id. at 1304. Plaintiff was discharged, and therefore his claim for back pay accrued, on March 31, 1994, almost eighteen years before he filed suit in this court.

Plaintiff recognizes the time that has passed since his discharge and acknowledges, absent any suspension of the accrual date or tolling of the statute of limitations, that his complaint was untimely filed. However, plaintiff argues that his complaint is timely for two reasons: first, because the accrual date for his wrongful discharge claim may be suspended; and second, because § 2501 specifically provides that "[a] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." With respect to the latter contention, plaintiff specifically argues that because he is currently incarcerated and is a recovering cocaine addict, he has been under a legal disability for the purposes of § 2501 and therefore the statute of limitations has not yet run. Neither argument is convincing.

The United States Supreme Court has made clear that the statute of limitations in § 2501 is a condition of the waiver of sovereign immunity and ordinarily may not be tolled. John R.

Sand & Gravel Co., 552 U.S. at 133-34.  However, claims against the United States are subject to the doctrine of accrual suspension, which directs "that the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed."  Martinez, 333 F.3d at 1319.  The accrual suspension rule is "strictly and narrowly applied," Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985), and therefore "it is not necessary that the plaintiff obtain a complete understanding of all the facts before the tolling ceases and the statute begins to run," Hopland Band, 855 F.2d at 1577 (citing Japanese War Notes Claimants Ass'n of the Phil., Inc. v. United States, 272 F.2d 356, 359 (Ct. Cl. 1967)).  Rather, a plaintiff "must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date."  Japanese War Notes Claimants Ass'n, 272 F.2d at 359.

      Plaintiff cannot meet the strict conditions of the accrual suspension rule.  Plaintiff argues that he was unaware of the Navy regulation that created the preference for rehabilitation, i.e., 32 C.F.R § 62.4.  But "the publication of rules and regulations in the Federal Register gives legal notice of their contents to those subject to, or affected by, them, 'regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.'"  Higashi v. United States, 225 F.3d 1343, 1349 (Fed. Cir. 2000) (quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947)).  Because the regulation relied upon by plaintiff, 32 C.F.R § 62.4, was published in the Federal Register, plaintiff had notice of it; the regulation was not concealed and its application to plaintiff was not inherently unknowable.  Thus, accrual suspension is inapplicable in this instance.

      Plaintiff also argues that he is "a person under legal disability" under § 2501 and thus has three years from when his disability ends to file his claim before the statute of limitations runs.  Specifically, plaintiff states that he should be considered as legally disabled because he is a drug addict and because he is currently incarcerated in Michigan state prison.  Neither of these arguments has merit.

      Legal disability is "a condition of mental derangement which renders the sufferer incapable of caring for his property, of transacting business, of understanding the nature and effects of his acts, and of comprehending his legal rights and liabilities."  Goewey v. United States, 612 F.2d 539, 544 (Ct. Cl. 1979) (per curiam); see also Black's Law Dictionary 528 (9th ed. 2009) (defining "disability" as "[t]he inability to perform some function; esp., the inability of one person to alter a given relation with another person").  The "legal disability" provision of § 2501 was designed "to provide relief from some personal handicap or impediment affecting the individual litigant and preventing him from bringing a timely suit."  Goewey, 612 F.2d at 544.  Moreover, "a claimant's 'ignorance of his right to bring suit in accordance with a cause of action is not a legal disability that tolls the statute of limitations.'"  Dean v. United States, 92 Fed. Cl. 133, 148 (2010) (quoting Bond v. United States, 43 Fed. Cl. 346, 349 (1999)).

      A claimant "must show that his disability existed at the time when the claim accrued rather than arising some time thereafter and that he suffered from the disability continually during the period in which the statute is to be tolled."  Ware v. United States, 57 Fed. Cl. 782,

788 (2003). "The statute of limitations recommences, however, if 'subsequent to the onset of disability, the plaintiff experiences a lucid or no disabling period.'" Bond, 43 Fed. Cl. at 349 (quoting Coon v. United States, 30 Fed. Cl. 531, 539 (1994)). "If, after the claimant regains legal capacity, he relapses again into a legal disability, the statute of limitations continues to run." Dean, 92 Fed. Cl. at 148 (citing Bond, 43 Fed. Cl. at 349).

Plaintiff's alleged conditions–incarceration and drug abuse–are not enough to prove legal disability under § 2501. "[N]arcotic addiction does not in itself constitute a statute-tolling legal disability unless the claimant alleges and shows that he was 'incapable of understanding the nature of his discharge,' which he sought unsuccessfully to change." Goewey, 612 F.2d at 544 (quoting Cochran v. United States, 506 F.2d 1406 (Ct. Cl. 1974)). And, "'[i]mprisonment is a not a legal disability under 28 U.S.C. § 2501, which would extend plaintiff's time for filing suit.'" O'Callahan v. United States, 451 F.2d 1390, 1393 (Ct. Cl. 1971) (quoting Grisham v. United States, 392 F.2d 980, 984 (Ct. Cl. 1968), overruled on other grounds by Cornetta v. United States, 851 F.2d 1372, 1381 (Fed. Cir. 1988)).

Even if the court were to agree that plaintiff's narcotic addiction and incarceration qualified as legal disabilities, however, the time under the statute of limitations would still have run due to plaintiff's filing of a correction application with the BCNR on May 2, 2007. "[S]eeking redress of one's rights at a corrective board is probative evidence that an individual is not under a legal disability." Coon, 30 Fed. Cl. at 540. Thus, at least as late as the date of the filing of plaintiff's application with the BCNR in 2007, any disability would have lifted. Under § 2501, a plaintiff has three years from the lifting of a disability to file a claim, and therefore the statute of limitations would have run on May 2, 2010, almost two years before plaintiff filed his complaint. Plaintiff did not timely file his complaint in this court.

As such, the statute of limitations has run on plaintiff's claims and the court must dismiss plaintiff's complaint. Because the complaint was filed after the running of the statute of limitations, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) at 514. Defendant's motion in the alternative for judgment on the administrative record is accordingly moot.

### IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiff's complaint for lack of jurisdiction because the statute of limitations has run. The clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

                                                                        s/ Margaret M. Sweeney
                                                                         MARGARET M. SWEENEY
                                                                         Judge